R. B. SHAW ET AL. v. THE STATE.

1. SUIT ON DELINQUENT SHERIFF'S BOND.—A suit by the State against a delinquent sheriff for failing to pay over taxes collected by him is a suit upon *the bond*, and the breach of the bond is the failure to pay over such taxes; suit not being upon the stated account from the comptroller's office, it is not necessary that such account be made part of the petition.

2. COMPTROLLER'S CERTIFICATE.—By the act of February 5, 1861, a transcript from the books of the comptroller, certified under his official seal to be correct, and containing a statement of the accounts between the State and a tax collector, is *prima facie* evidence against such collector of taxes in a suit by the State for taxes collected.

3. CROSS-EXAMINATION OF WITNESS.—The bookkeeper in the comptroller's office being examined in aid of the certified account, and testifying to having made the statement of the account in evidence, and that it was correct, on testifying that there had been an accounting between the comptroller and the defendant, should have been allowed on cross-examination to state how the account stood upon such accounting, and its satisfaction by payment, if in fact such payment had been made.

4. COMPTROLLER'S DUTY.—The authority of the comptroller to examine and settle the accounts of persons indebted to the State is not superseded by his ordering suit against a delinquent tax collector as to the account of such officer; and a settlement made by the comptroller controls the disposition of the suit.

5. COMPROMISE WITH DELINQUENT SHERIFF.—The act (Paschal's Dig., art. 5907) authorizing the comptroller to compromise with defaulting revenue officers, with the approbation of the Attorney General, does not impose such approbation upon the act of the comptroller in settling the account by payment of such account.

6. CONSTRUCTION OF STATUTE.—Art. 7638, Paschal's Digest, does not provide two remedies against a delinquent tax collector, one by suit on the bond and the other on the "certified account," but contemplates suit upon the bond and immediate notice published, &c., and

no judgment to be had until three months after such notice; upon such proceedings the ten per centum damages are to be assessed upon the amount of indebtedness in the judgment.

7. SAME—DAMAGES.—Damages can only be assessed upon complying with the statute (Paschal's Dig., art. 7638) as to notice, publication, and filing certified account; and the settlement of the *balance* by the delinquent before expiration of three months discharges damages as well as the debt.

APPEAL from Travis.    Tried below before the Hon. J. P. Richardson.

This is a suit instituted by the State against the appellant, R. B. Shaw, and his sureties on his bond, as sheriff of Kaufman county.

The petition was filed in the District Court of Travis county on the third day of December, 1873, alleging that the said Shaw was, on the 30th November and the 1st, 2d, and 3d December, 1869, elected sheriff of Kaufman county. That afterwards, to wit, on the 21st day of November, A. D. 1870, he executed his official bond as such sheriff and collector of taxes for said county for the sum of eight thousand dollars.    The bond is made an exhibit to the petition and is conditioned as the law provides.

That the said Shaw became chargeable with and liable to pay to plaintiff the sum of $16,657.53, as taxes for the year 1871; that of said amount he had failed to pay into the treasury the sum of $1,890.56; that for the year 1872 he was chargeable with and liable to pay the sum of $12,402.07, and of this sum he had failed to pay into the treasury the sum of $6,246.65.

No statement of the account from the office of the comptroller was filed with the petition or made an exhibit thereto.

February Term, 1874, defendants demurred generally and specially, and defendant Shaw answered that he had made settlement with the comptroller of his accounts as collector of taxes for Kaufman county for the years 1871 and 1872, and had made full and complete payment of all

demands against him as such tax collector, and obtained a receipt in full from said comptroller for all demands against him by virtue of the tax-rolls of Kaufman county for said years.

At the June Term an amended petition was filed denying that the defendant, Shaw, had settled his accounts with the comptroller, as alleged by him, but alleging that he had on the 12th day of December, 1873, (after the institution of this suit,) paid a small amount of his indebtedness due the State.

Defendants amended their answer, alleging that defendant Shaw was not in default in settling his accounts; that the delay in making settlement was occasioned by the failure of the comptroller's department to adjust his accounts; that he had deposited in the city of Austin, long before the institution of the suit, the full amount of the taxes due from Kaufman county to the treasury of the State, and that on the twelfth day of December, by the comptroller, was fully discharged and acquitted of all demands against him by the State on account of taxes due the State from Kaufman county for the years 1871 and 1872; that upon settlement with the comptroller, and not before, he was advised that petition had been filed against him and his sureties in the District Court of Travis county, and that he then paid to the clerk the costs which had accrued, taking his receipt therefor.

The counsel for the State moved the court to strike out that part of defendant's amended answer relating to deposit of money and to a settlement with the comptroller for irrelevancy, and because the same affords no ground of defense.

On the trial plaintiff's motion to strike out was sustained and defendant's general and special demurrers were overruled by the court, to which defendant's counsel excepted.

Under the instruction of the court the jury returned a general verdict as to amount due by the defendant, Shaw,

and a special finding as to the amount due at the date of the institution of the suit; upon which the court rendered judgment for the amount of ten per cent. upon the special finding of the jury.

There was a motion for a new trial overruled by the court, and notice of appeal given, which is here prosecuted.

The facts and rulings of the court below appear in the opinion.

*Shelley & Moore,* for appellants.

*Sheeks & Sneed,* for the State.

REEVES, ASSOCIATE JUSTICE.—The court did not err in overruling the defendant's general and special demurrer to plaintiff's petition.

The petition alleges the execution of the bond by R. B. Shaw, as sheriff and collector of taxes, and by the other defendants as his securities; that Shaw collected as taxes for Kaufman county for the year 1871 the sum of $16,567.53, and failed to pay over of that sum $1,890.56; that he collected of the taxes for 1872 the sum of $12,402.07, of which he failed to pay the sum of $6,246.65.

Appellants contend that there is no breach of the bond alleged in such form as that the defendants are liable therefor, and that a breach of the bond could not be assigned without filing with the petition, as a bill of particulars or an exhibit, a statement of Shaw's account from the office of the comptroller.

The suit was not on the stated account from the comptroller's office but upon the bond, and its breach, as alleged in the petition, was in failing to pay over the money charged to have been collected at the time and in the manner required by law. The petition shows a cause of action, and the State was entitled to recover the balance due on proof of the allegations of the petition.

Nor do we think the court erred in overruling defend-

ant's objection to the introduction in evidence of the account from the books of the comptroller's office, dated November 11, 1873, of the amount of taxes due by defendant Shaw. This account was authenticated under the seal of the comptroller's office, and was properly admitted as *prima facie* evidence under the act of February 8, 1861. This act provides, "In every case of delinquency on the part of any officer or agent of this State, and in all cases where such officers or agents fail to pay to the State any money due by them to the State, where suit has been or shall be instituted by the State against such officer or agent on account thereof, a transcript from the books and proceedings of the office of comptroller of public accounts, containing a true statement of accounts between the State and the party, authenticated under the seal of said office, shall be admitted as *prima facie* evidence, and the court trying the cause may thereupon render judgment accordingly." (Paschal's Dig., art. 3707.)

It is to be presumed that the account was admitted in evidence under this statute. In aid of the account the plaintiff introduced James Hancock as a witness, and proved by him that during the year 1873 he was employed as bookkeeper in the office of the comptroller; that he made the statement of accounts with the defendant, R. B. Shaw, sheriff and tax collector of Kaufman county for the year 1872; and that the sum of six thousand two hundred and forty-six dollars and sixty-five cents, as stated in the account, was the amount of Shaw's indebtedness to the State on the 11th of November, 1873. So far we find no error in the action of the court.

The witness, Hancock, was not allowed to answer certain questions put to him by defendant's counsel on cross-examination, and the ruling of the court in this respect is complained of as being erroneous. Appellants further complain that the court erred in excluding from the jury R. B. Shaw's evidence of settlement with the comptroller and payment

of his indebtedness to the State after the institution of the suit. This evidence consists of two receipts, showing payment of the balance due on his account for the years 1871 and 1872—one by A. Bledsoe, comptroller, and the other by Stephen H. Darden, comptroller. The first receipt reads as follows: "Austin, Dec. 12th, 1873. Received of R. B. Shaw, sheriff of Kaufman county, the sum of forty-seven hundred sixty-six and $\frac{99}{100}$ ($4,766.99) dollars in checks, &c., and the further sum of five hundred ninety-seven and $\frac{82}{100}$ ($597.82) dollars in treasury warrants issued to him for services as sheriff, making a total of fifty-three hundred and sixty-four and $\frac{81}{100}$ ($5,364.81) dollars, and the balance due on his accounts for the years 1871 and 1872." Signed by the comptroller and witnessed by his seal of office. The second receipt is as follows: "Austin, Feb. 7, 1874. It appearing from the books, records, and files of this office, R. B. Shaw, sheriff of Kaufman county, on the 12th day of December, 1873, paid and discharged all demands of the State against him as sheriff and tax collector for the years 1871 and 1872, there exists no cause of action against him in behalf of the State of Texas, and any suit pending against him therefor is hereby directed to be dismissed. Signed, Stephen H. Darden, comptroller." The original petition was filed on the 3d of December, 1873, from which it will appear that both receipts were given after the institution of the suit.

The witness, Hancock, was not permitted to answer on cross-examination by defendants' counsel whether or not there had been a settlement made by the defendant, Shaw, with the comptroller's office at any time of the amounts referred to in the account of November 11, 1873, and read in evidence by the plaintiff, and which the witness had stated in his examination in chief exhibited the amount of Shaw's indebtedness to the State. But the witness was allowed to testify that there had been an accounting between him as book-keeper in the comptroller's office and

the defendant, Shaw.   The court, in effect, held that while the accounting might be proved by the witness, the amount ascertained to be due could not be shown by parol testimony.   The answer sought on the cross-examination of the witness was directed to the same object as that which was sought by the introduction of the comptroller's receipt; that is, to show the state of the defendant's account as collector of taxes for Kaufman county.   The comptroller's receipt was admitted as evidence of the amount stated as paid, but not as evidence of the fact that it was a settlement in full of defendant Shaw's indebtedness.   The court held that the defendant might prove a settlement with the comptroller prior to the institution of the suit, but not subsequently.   The opinion of the court is fully expressed in the instructions to the jury, to the effect "that it was the duty of the defendant to settle his accounts with the comptroller before the institution of the action against him.   After the suit was instituted the comptroller had no right to settle the accounts, and any settlement so made should be disregarded by the jury, but that any money actually paid into the treasury by the defendant may be allowed, whether paid before or after the institution of the suit."   In accordance with these views the court excluded from the jury Comptroller Darden's statement, showing that defendant Shaw had paid and discharged all demands against him, as appeared from the books of his office, and directing the suit to be dismissed.

The account of November 11, 1873, read in evidence by the plaintiff, shows a balance against Shaw of $6,246.65. Comptroller Bledsoe's receipt, dated December 12, 1873, read in evidence by the defendants, shows payments amounting to $5,364.81.   The deposit warrants, also read in evidence by the defendants, show the payment of this sum into the treasury, though after the institution of the suit.

If the comptroller's receipt was admissible in evidence,

it shows that there must have been another accounting with Shaw after that of November 11, when it was ascertained that the balance against him was the sum for which the comptroller gave the receipt.

The witness, Hancock, having testified that there had been an accounting between himself, as book-keeper in the comptroller's office, and the defendant, Shaw, the examination might properly have been extended to an inquiry as to the amount found to be due with reference to both the account and the receipt.

W. C. Phillips, chief clerk in the comptroller's office, having been examined as a witness, testified that the defendant, Shaw, paid the amounts specified in the receipt, and when the money was collected on checks the deposit warrants were made out and the money paid into the treasury; and that he was satisfied the receipt and the deposit warrants represented the same money. He further stated that nothing was paid by Shaw into the treasury after the receipt was given.

Shaw's right to a credit for all amounts which he paid into the treasury, either before or after the institution of the suit, is not contested. But it is insisted that the receipt and the statement of the comptroller are not evidence of a settlement in full of his indebtedness. It is therefore necessary to inquire as to the comptroller's authority to make the settlement and the effect of it after suit was instituted.

It is the duty of the comptroller to superintend the fiscal affairs of the State; give instructions to the assessors and collectors of the taxes; settle with them for taxes; keep an accurate account of all moneys paid into the treasury; keep all accounts of the State; audit all claims against the State; draw warrants upon the treasurer in favor of the public creditors; and perform such other duties as may be prescribed by law. (Constitution, Art. IV, sec. 20.)

The act defining the general duties of the comptroller

provides that he shall keep and state all accounts in which the State is interested; examine and settle the accounts of all persons indebted to the State and certify the amount or balance to the treasurer, and direct and superintend the collection of all moneys due the State; he shall remit or make an allowance to every tax collector in the auditing of his accounts for all sums of money which in his judgment have been illegally assessed. (Act of April, 1846; 1 Paschal's Dig., art. 5413.)

The authority of the comptroller of public accounts to superintend the fiscal affairs of the State under prescribed limitations has the sanction of the Constitution and repeated acts of legislation. By the act of April 28, 1873, (General Laws, page 51,) to provide for prompt settlement of accounts by sheriffs with the State and counties, it is made the duty of the comptroller to see that suit is brought upon the official bond of any sheriff who may fail to make settlement of his account for taxes due the State in the manner directed by the act. This act further provides that " In suits hereinbefore provided no claim for a credit shall be admitted upon trial but such as shall appear to have been presented to the comptroller of public accounts for examination, and by him disallowed in whole or in part, unless proved to the satisfaction of the court that the defendant is in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting such claim for such credit to the comptroller by unavoidable accident or mistake."

It is contended in behalf of appellee that there is no pleading in the record setting up any settlement and compromise in accordance with article 5907, Paschal's Digest, and that defendant Shaw never brought himself within the provisions of this act. Hence the court was not in error in holding that the comptroller's receipt given after the institution of the suit was not evidence that a settlement or compromise had been made with Shaw under that

law. This law provides that the comptroller of public accounts may compromise with defaulting revenue officers with the approbation of the Attorney General.

This act was passed on the 6th November, 1871, and was of force at the date of the receipt and the directions of the comptroller for dismissing the suit, but was repealed before the trial by the act of May 2, 1874. (General Laws, page 205.) The repealed act authorized settlement with defaulting revenue officers of the State or their securities by compromise, or in any other manner the comptroller might deem best for the interest of the State, but had no reference to settlement by payment of the amount found to be due.

The mode of settlement with the comptroller, as explained by Hancock, the book-keeper in the comptroller's office, was to charge the collector with the aggregate amount of the assessments, as per the rolls for their counties, and credit them with payments made and with delinquent and insolvent lists. The comptroller certifies that Shaw had paid and discharged all demands of the State against him as sheriff and tax collector for the years 1871 and 1872. If this certificate and statement had been admitted in evidence, as we think it should have been, it would have appeared that Shaw had settled by payment, and not by compromise and payment of a less sum than he was owing the State and which would have required the approval of the Attorney General. As a payment it was not required that the settlement should have been approved by the Attorney General. The comptroller alone was authorized to make settlement in such cases.

By article 7638, Paschal's Digest, of the act of August 15, 1870, for the assessment and collection of taxes, suit upon the bonds of defaulting tax collectors may be brought in the District Court of Travis county. It directs that "the comptroller shall immediately publish notice in some newspaper published in the city of Austin, setting forth that

he will, within three months thereafter, file in the office of the District Court of Travis county, with the clerk thereof, an accurate and certified account of the amount with which such sheriff is chargeable, and thereupon such clerk shall enter up a judgment against such sheriff for the amount wherewith he is chargeable, with lawful interest thereon from the date of such default until the date of payment, and in addition thereto ten per cent. penalty, unless the comptroller shall recommend a reduction thereof, which judgment shall have the same validity and be subject in all respects to the like proceedings thereupon as if it had been rendered by the court."

The act of 1870, from which this section is quoted, it is thought, does not provide two remedies, one on the bond and the other on the certified account, but only one remedy, and that by suit on the bond. The suit is brought by the direction of the comptroller, the giving of notice and filing the account are acts to be performed by him, and in addition thereto the penalty for the default may be reduced on his recommendation.

It is apparent that the comptroller's authority to settle the account does not cease with the institution of the suit under the provisions of this statute. The notice must be published immediately upon the commencement of the suit, and the judgment cannot be entered up until three months thereafter. The institution of the suit on the bond did not prevent the defendant, Shaw, from paying his indebtedness, nor the comptroller from receiving the payment within the three months limited by the statute and before the account was filed with the clerk. The payments were made less than three months and shortly after the suit was filed. It is not shown that the notice was ever published. The account was not filed before the date of the trial on June 11, 1874.

How far this section of the act directing the clerk to enter up judgment in vacation on notice by publication

could be enforced on constitutional grounds is not a question in the case.

The authority of the comptroller over the matters intrusted to his supervision is not confined alone to the act of 1870. We have seen that it is part of his general duties to keep and state all accounts in which the State is interested, examine and settle the accounts of all persons indebted to the State and certify the amount or balance due, and direct and superintend the collection of all moneys due the State, remit or make an allowance to tax collectors for taxes illegally assessed, &c.; that no claim for a credit shall be admitted upon trial but such as shall have been presented to the comptroller for examination and by him disallowed, except in cases of accident or mistake.

It has also been shown that transcripts from the comptroller's office properly certified are *prima facie* evidence in suits brought by the State. The same effect, we think, should be given to the receipt and certificate of the comptroller that Shaw had settled his accounts; that is, these papers should be regarded and taken as *prima facie* evidence that Shaw had paid and discharged all demands of the State against him as sheriff and tax collector.

It is not shown upon what basis the jury found that $1,440.16 was due on the account. The item for county and road and bridge tax was not a proper charge in this suit. The difference in amount, as shown by the stated account of November 11 and the payments made thereafter, may have been covered by an allowance to Shaw for mileage and commissions, or by remitting taxes illegally assessed, in the opinion of the comptroller, or in some other way. Whatever it may have been, it is not now before this court for revision. The subsequent payment by Shaw of all demands against him as collector of taxes, as certified by the comptroller, is *prima facie* evidence of the correctness of the settlement, and it was necessary to show

that the settlement was not correct to warrant a verdict against him. The settlement is not conclusive, but may be corrected on proof of error or mistake on another trial.

The judgment for the ten per cent. damages on the amount found by the jury to be due at the time of the institution of the suit is believed to be erroneous. To recover the damages or penalty the requirements of the statute as to notice, publication, and filing of the certified account, must be complied with. (Paschal's Dig., art. 7638.) The penalty for the default depends upon the state of the account at the time when it is required to be filed with the clerk; if payment is made within that time, there is nothing upon which the judgment can be entered and nothing to which the penalty can attach.

It was error to strike out that part of the answer filed June 10, 1874, in relation to the settlement of defendant's accounts with the comptroller. The deposit of money in the city of Austin for payment, &c., as averred in the answer, was irrelevant and no defense to the suit.

The charge of the court does not require a separate examination. It will be seen that it is not in accordance with the views we have expressed.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[JUSTICE MOORE did not sit in this case.]