16   25
31   209
31   213

16   25
36   124
36   128
37   623

[No. 2959.]

## JOHN HOUSE *v*. THE STATE.

1. THEFT—PRACTICE—EVIDENCE.—It is a well settled rule of practice that, " when necessary to establish identity in developing the *res gestæ*, or in making out the guilt of the accused by circumstances connected with the theft, or to explain the intent with which the accused acted with respect to the property for the theft of which he is on trial, it is competent for the State to prove that other property was stolen at or about the same time and in the same neighborhood from which the property in question was stolen; and that this other property was found in the possession of the defendant when arrested for the theft of the property for which he is on trial. Under such state of case, however, it is the duty of the court to explain, in the charge to the jury, the purpose of such proof." See the opinion for evidence admissible under this rule.

2. SAME—ACCOMPLICE TESTIMONY—CHARGE OF THE COURT.—The State has the right, in a prosecution for cattle theft, to prove that the defendant illegally altered the brands on the cattle. Where, then, it appears that a witness knew that the defendant illegally altered the brands, and with this knowledge and the further knowledge that a third party claimed the cattle through the defendant, he assisted the said third party to drive the said cattle to market, such evidence is sufficient to raise the question of the witness's complicity. Under such a state of facts, the court charged the law of accomplice as follows: " An accomplice is one who, knowing the unlawful intent of another, aids him in the commission of the theft. If the jury find that the witness H. was an accomplice in the theft, provided a theft was committed as charged, then the jury could not convict the defendant on his testimony alone, and unless it be corroborated in some material matter tending to connect the defendant with the theft," etc. This charge was excepted to, in the motion for new trial, upon the ground that the court erred in setting out and defining the law of accomplice testimony, in limiting the question of accompliceship to the connection of the witness with the commission of

the theft. *Held*, that the objection was well taken; that the charge should have submitted the question of *particeps criminis* in its full import, whether with regard to the original theft or to any subsequent connection with the stolen property; and that the error is of such character as to operate to the prejudice of the defendant, and is therefore cause for reversal.

APPEAL from the District Court of Gonzales. Tried below before the Hon. Everett Lewis.

The conviction in this case was for the theft, in Gonzales county, Texas, on the fifteenth day of January, 1883, of one head of neat cattle, the property of A. S. Billings. A term of three years in the penitentiary was the penalty assessed by the jury.

A. S. Billings was the first witness for the State. He testified that he recovered his yearling in June, 1883. Witness had last seen the animal in January previous. It was then branded SIDS. When recovered it was branded BIDSI. The witness identified the animal by flesh marks and the brand. It was a red and white speckled steer yearling, whiter about the hips than on any other part of the body. Its tail had been bobbed or the brush cut off when recovered. Mrs. Wheat had turned the animal out of her pen in the fall, and witness last saw it on its accustomed range in January. Witness had at no time consented that any one should take it. This animal ran with its mother in Gonzales county, and when last seen was following her. The mother was a cow belonging to the witness, but which had been milked by a neighbor, Mrs. M. A. Wheat. The range of the cow and yearling was near Lee Duren's, on Sandies creek, about two miles from the witness's place. The defendant lived about twelve miles from the witness's house. The witness's mark had also been changed.

The BIDSI brand was the only one on the yearling when it was recovered. From appearances, the witness surmised that the brand was changed in the spring. The defendant once penned stock at witness's place, and witness's cattle, branded SIDS, were around the pen at the time. The defendant lives in either Karnes or DeWitt county, near the line between the two counties. The cow and yearling were turned out in the fall, and the latter was still sucking when last seen in January. The first S was the only part of the brand that had been changed, and I had been added after the last S. The IDS was part of the

old brand, and had not been run over. The letter S. showed plainly under the B. The brand as changed had peeled, but had not "haired over." The witness, Lee Collins, and Fitz Henry, examined the brand in the court house yard. When witness roped the yearling, it was perfectly gentle and came up to witness. The witness found the mother of this animal with her bunch in March. The yearling was not then with her. Witness's cattle had never ranged outside of Gonzales county, so far as he knew.

The Gonzales county record book of brands was then introduced, and showed that the brand SIDS was recorded in the name of the witness Billings, on March 2, 1880. His mark, as recorded, was a crop and underbit in the left and overslope in the right ear.

John Mills was the next witness for the State. He testified that in March or April, 1883, he saw about twenty-five head of cattle, freshly branded with a circle J in Trammel's pasture. This brand, on some animals small and on other animals large, was over old brands, and was put there evidently to hide or cover the old brands. This brand the witness had known as that of the defendant. A bob-tailed yearling, branded BIDSI, was among the twenty-five head in Trammel's pasture. These cattle were taken in charge by officers about one month after the witness saw them. While the officers were taking the cattle in charge, the defendant and Wade and Charles Kennedy came up, and defendant and Wade Kennedy were arrested. The B in the brand named was the only letter run over, and the terminal I was added. The old brand showed plainly under the new. The circle J brand was not then on the yearling. It takes a brand from three to four weeks to peel off.

The witness thought that the pasture was in charge of Phil. Trammell. It was on the old Trammel place on Sandies creek, near Leesville. The defendant lived about twenty miles distant from this pasture, in a southerly direction. Witness and C. L. Frisbee, both deputy sheriffs, went to Trammel's pasture together, to look at the cattle. They saw the cattle no more until June, when they took charge of them, and arrested the defendant and Henry Trammel. The testimony of deputy sheriff Frisbee was substantially the same as that of this witness.

Sheriff D. C. Price testified, for the State, that he had some yearlings in the court house yard for a time that were sent in

by deputy sheriff Frisbee. A. S. Billings claimed and got one of them. Witness knew nothing about the brands.

Henry Trammel next testified for the State. According to his statement he bought, in the early part of April, 1883, twenty-three head of yearlings from John House, the defendant. He bought them in DeWitt county, and drove them to Gonzales county. The cattle were in Powell's small pasture near defendant's house when witness bought them, and were gathered by witness in that pasture. Jesse Haldeman, a witness in this case, assisted the witness to drive these cattle to Gonzales county. The defendant did not, though he accompanied the witness from Powell's pasture to the road, about a quarter of a mile, where he turned back. Among these twenty-three head of cattle purchased by the witness from the defendant, was a bob-tailed yearling branded BIDSI. This brand was fresh, showed to be a clean brand, and was just peeling when witness bought the animal. The brand was not changed after witness got the animal. Witness took no further notice of the brand. The yearling in question was in the witness's pasture when the crowd came there in June. The witness had since seen that animal in the court house yard in the town of Gonzales. The State then proved by this witness that he was under five or six indictments for cattle theft, in connection with these same cattle. If the brand on the yearling had been run over, that fact, he said, could not be detected.

R. J. Kennedy testified that Henry Trammel and Jesse Haldeman penned some cattle in his pen one night, and took them off early next morning. Sometime after this, the defendant, John House, came to the witness's house and said to witness: "I understand that Henry Trammel is about to get into trouble about some cattle I let him have. I will go up there and get them and turn them loose on the prairie at home, and then I will like to see anybody get them." This occurred on the day that defendant was arrested at Trammel's pasture.

Jesse Haldeman, the next witness for the State, testified that the defendant and Henry Trammel came to him, and the latter hired him to assist in driving a bunch of cattle to Gonzales county. The defendant said that Trammel would pay the witness well for the service, and that he would see that payment was promptly made. The bunch of cattle numbered twenty-two or twenty-three head. Some of the brands were blotched, and some were run into old brands. Three of these animals the

witness sold to the defendant. Two of these three, the defendant mavericked, and let House (Trammel?) have. Witness and Trammel put these cattle in Trammel's pasture. The witness did not see the alleged stolen animal in that herd, and knew nothing about it. He never saw that animal in his life, and had never seen the BIDSI brand. The defendant, while in the Cuero jail sometime before this trial, told the witness that he would be willing to pay witness fifty dollars not to testify against him in this case. The defendant accompanied witness and Trammel with the cattle about seven miles, to a point about a quarter of a mile past Mrs. Tennell's place, in the direction of Trammel's pasture. The witness did not, on the trial of this case in Cuero, testify that House, the defendant, did not go into Gonzales county with witness, Trammel and the cattle.

The witness left home in April, and went to Wilson county. He remained at his brother-in-law's house, near Stockdale, in that county, until June, when he went to a place above Austin. Thence he went to Bob Still's place, in Bandera county, where he remained until September, when he returned to his home, about a quarter of a mile from defendant's house. The witness did not, in discussing the troubles of the defendant and Trammel, tell Archie Mims that the authorities had got the wrong men; that he, the witness, got the cattle, sold them, and received the money for them. These cattle were driven from DeWitt on the eighteenth day of April, 1883, by Henry Trammel and the witness. Witness himself made arrangements to turn State's evidence in the House cases, and never spoke to the officials about this case. Witness told the defendant, when he was changing the brands on these cattle, that we would be caught. The defendant replied that he would not be caught; that "these men had stolen these cattle, and that he would get away with them, d—n them." Witness roped some of the cattle for the defendant.

John Duderstadt testified, for the State, that Mrs. Tennell lived one and a half or two miles inside of Gonzales county. County commissioner Wright was of opinion that Mrs. Tennell lived in DeWitt county, near the line of Gonzales county.

J. Y. Stamps, for the defense, testified that the defendant came to his hotel in Harwood in April, 1883, left his horse at the stable, and took the train for San Antonio. He was gone two, three or four days, returning on an evening train. Another witness for the defense, Mr. H. S. Parker, testified that the de-

fendant, *en route* to San Antonio, took supper at his, witness's, house in Gonzales county, on the evening of the fourteenth or fifteenth of April, 1883. From witness's house defendant went direct to Harwood.

Archie Mims was the next witness for the defendant. He testified that, in the latter part of July or the early part of August, 1883, in Bandera county, Jesse Haldeman told him that he, Haldeman, got the animals about which House and Trammel were in trouble, and that he had the money for them, and that the authorities had arrested the wrong men.

Two witnesses located Powell's pasture in DeWitt county, three miles from the Gonzales county line, and Mrs. Tennell's place five miles from Powell's and in Gonzales county, one and a half or two miles from the DeWitt county line.

W. L. Davidson testified, for the defendant, that on a former trial of defendant in Cuero, the witness Jesse Haldeman testified that the defendant did not, when these cattle were driven into Gonzales county, go with him and Trammel into Gonzales county.

The defense recalled the witness Jesse Haldeman in order to examine him and lay a predicate to impeach his testimony. The question was asked him: "Did you not, in the first week in June, in Wilson county, Texas, after J. D. Wade told you of House's troubles, tell the said Wade that you would have to leave the country; that if you were caught you would be caught running; that you got the cattle and that John House did not?" The witness promptly replied in the negative. He was then asked: "Did you not, on the day you returned from Trammel's pasture, stop at R. J. Kennedy's, and go from that point to Smiley's lake with Brassell Kennedy, and did you not there have a conversation with Brassell Kennedy about the cattle you and Trammel drove to Trammel's pasture, and did you not tell the said Kennedy that you got the money for most of those cattle, and that John House had but very little interest in them and got but little in the matter?" The witness Haldeman answered that he went to Smiley's lake with Brassell Kennedy, and got drunk at Smiley's, where he talked a great deal. He did not know what he said, but knew that he made no such statement to said Kennedy as was imputed to him. The defense then proposed to introduce the said Wade and Kennedy to contradict the witness, but was not permitted by the court to do so. The defense then proposed, but was not allowed, to prove by R. Schnei

der that said Schneider bought the yearling from Haldeman, left it with other cattle of his, Schneider's, in charge of defendant.

The motion for rehearing includes the questions involved in the opinion.

*Fly & Davidson* filed able briefs for the appellant.

*J. II. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE. At the last Galveston term of this court we affirmed the judgment in this case without a written opinion. Appellant at that term made a motion for rehearing, which was submitted and transferred to this branch.

We will discuss but two of the grounds presented; first, that which relates to the admission of certain evidence over the objections of defendant; and second, the charge of the court with reference to what constitutes a witness an accomplice.

It appears from the record that Henry Trammel bought twenty-three yearlings from John House, in DeWitt county, and that these yearlings were driven to Gonzales county and placed in Trammel's pasture. Among and with this bunch of cattle was the yearling charged to have been stolen by defendant. And it further appears that the witness Haldeman let House have three of the yearlings, and assisted Trammel in driving the twenty-three head to Gonzales county. By Haldeman the State proved, over objections of defendant, that defendant changed the brands on these cattle. The objection is that the testimony fails to identify the cattle upon which the brands were changed, Haldeman swearing positively that the yearling in dispute was never seen by him at any time "in his life." It is, however, stated by Trammel that this yearling was in the bunch of the twenty-three head, and that Haldeman assisted him in driving them to Gonzales county.

A fact is admissible because of other facts in the record, and this rule is not affected by a conflict in the evidence contradictory of the existence of the fact. The jury may have believed Trammel, and if so, the yearling was with and constituted one of the twenty-three head received by Trammel at Powell's, and driven by him and Haldeman to Gonzales county, and there placed in Trammel's pasture

Under these circumstances, had the State the right to prove

by Haldeman that the brands on some of these cattle—the cattle received by Trammel from defendant at the same time the yearling in dispute was received—were fraudulently altered?

We are of the opinion that this was competent and admissible evidence under the principles enunciated in the following rule: "When necessary to establish identity in developing the *res gestœ*, or in making out the guilt of the accused by circumstances connected with the theft, or to explain the intent with which the accused acted with respect to the property for the theft of which he was being tried, it was competent for the State to prove that other property was stolen at or about the same time and in the same neighborhood from which the property in question was stolen, and that this other property was found in possession of the defendant when arrested for the theft of the property for which he was on trial· The purpose of such proof, however, must be explained in the charge of the court."

If the State had the right to prove that the defendant altered the brands on these cattle — and we hold that it had — Haldeman knew that defendant had fraudulently altered these brands, and with this knowledge assisted Trammel, with the further knowledge that he claimed through defendant, to drive them from DeWitt county to Gonzales county. In this we find evidence tending to show that Haldeman was an accomplice. This fact impressed itself on the learned judge presiding, and upon this subject he gave the following charge to the jury: "An accomplice is one who, knowing the unlawful intent of another, aids him in the commission of the theft. If the jury find that the witness Haldeman was an accomplice in the theft, provided a theft was committed as charged, then the jury could not convict the defendant on his testimony alone, and unless it be corroborated in some material matter tending to connect the defendant with the theft," etc.

To this charge the defendant excepted in his motion for new trial, upon the following ground: "The court erred in setting out and defining the law of accomplices when used as witnesses in the trial of a cause, in limiting the question of accompliceship to the connection of the witness with the commission of the theft. The charge should have submitted the question of *particeps criminis* in its full import, whether with the original theft or any after connection with the stolen property.'

This objection to the charge is unqestionably well taken, and

we would remark that when this point passed under examination at Galveston, our view of the record bearing upon this subject led us to believe that Haldeman was an accomplice by reason of the fact that he participated in the *taking* of the yearling. In other words, that the evidence tended to show that he was an accomplice, and that he became so by aiding in the *taking* as well as in driving the yearling; and that consequently there was no injury to defendant. In this, however, we find that we were mistaken, and hence the error in the charge assumes a very serious character, it being doubtful whether Haldeman took, or aided in the taking, and there being no doubt of his guilty connection with the yearling after the theft, if Trammel is worthy of belief.

"Accomplice" has a broader signification as used in Article 731 of the Code of Criminal Procedure than it has as used in Article 79 of the Penal Code. In the former it includes principal and accessory — in fact, all guilty participants, whether principals, accomplices or accessories. (*Williams et al.* v. *The State*, 42 Texas, 392; *Jones* v. *The State*, 3 Texas Ct. App., 575; *Davis* v. *The State*, 2 Texas Ct. App., 588; *Kelly et al.* v. *The State*, 1 Texas Ct. App., 628; *Irvin* v. *The State*, 1 Texas Ct. App., 301; *Roach* v. *The State*, 4 Texas Ct. App., 46; *Miller* v. *The State*, 4 Texas Ct. App., 251; *Barrara* v. *The State*, 42 Texas, 260.)

We are of the opinion that the error here complained of was of such importance as was calculated to injure the rights of defendant, and that the judgment must be reversed.

We cannot refrain from noticing the condition of this record — that which relates to the facts of the case. Confusion and uncertainty abound in regard to matters which could have been made clear and certain. A few instances will suffice. Haldeman swore that the brands were altered. How altered? In what brand were the cattle before they were altered? And into what brand did the alteration place them? When did the alteration take place? Did the brands, after the alteration, correspond with those on the cattle when seen by the other witnesses in Trammel's pasture? Twenty-five or thirty head of cattle were seen in Trammel's pasture, branded in defendant's brand. What description of cattle? Trammel bought of defendant twenty-three head of yearlings. Were those seen in his pasture in defendant's brand yearlings? We could point out other facts

left in obscurity which could have been placed beyond cavil, but these instances will answer our purpose.

We have examined each assignment made by defendant closely, but do not find such error as will require a reversal of the judgment, except the error in the charge of the court, above noticed. The ruling of the court in regard to the right of defendant to introduce certain witnesses will not, under the circumstances, be revised. The facts proposed to be proved by those witnesses, however, were very clearly admissible.

For the error in the charge of the court, above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered April 19, 1884.